FILED
CLERK, U.S. DISTRICT COURT

JULY 13 2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____RS_____ DEPUTY

Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff-Relator,
**RELATOR, LLC**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**2:22-CV-04783-CAS-PDx**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. |
| Plaintiff, | |
| *ex rel.* **RELATOR LLC**, a California limited liability company, | **COMPLAINT FOR VIOLATIONS OF FEDERAL FALSE CLAIMS ACT** |
| Relator, | **FILED *IN CAMERA* UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| v. | |
| **RIVIERA FINANCE LLC**, a California Limited Liability Company; **RIVIERA FINANCE OF TEXAS, INC.**; a California Corporation; and DOES 1-10, | **DO NOT PLACE ON PACER** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff RELATOR LLC (hereinafter referred to as "Plaintiff") complains of

**RIVIERA FINANCE, LLC**, a California Limited Liability Company, **RIVIERA**

COMPLAINT

**FINANCE OF TEXAS, INC.** a California Corporation, (collectively "Riviera" or "Defendants") and DOES 1-10 and alleges as follows:

## I.    INTRODUCTION

1.    This is a case about greed and misappropriation of aid funds during a national emergency. In this case, Riviera Finance, LLC and its affiliate Riviera Finance of Texas, LLC[1] applied for and received two PPP loans for a **$2,738,544.00**, purportedly to cover payroll costs for workers, however these loans were illegal because Riviera is a *factoring company*, a <u>factoring</u> lender (money lender) and therefore *ineligible* to receive any PPP loans; and after receiving the loan Riviera did not return the money.

2.    Riviera was <u>prohibited</u> from receiving SBA loans. Riviera's business type, factoring, is ineligible for SBA loans because they are a **factoring company**.[2] Factoring companies are money lenders. The SBA do not authorize factoring companies from applying for, accepting or using any PPP loans. Defendant's certification was <u>false</u> because **they <u>are</u> the type of business/industry which is prohibited from SBA loans**. Riviera's business is factoring, or money lending, to small and medium businesses.

3.    <u>NAICS Code</u>. On its application, Defendant admitted it is a *lender*.

---

[1] Although it is called Riviera Finance of Texas, Inc. the company was formed, transacts business and is located in Redondo Breach, California, not Texas.

[2] Riviera Finance, LLC and its many subsidiaries including Riviera Finance of Texas, Inc. tout themselves as a "top invoice factoring company." Riviera's website defines Invoice Factoring as: "Invoice factoring is the purchase of accounts receivable for immediate

Defendant reported its NAICS code as 522291: Consumer Lending.[3]

4.     <u>Riviera Knew Their Loan Application Illegal</u>. Defendants knowingly and intentionally falsified their "eligible" business expenses on their applications. Riviera is a sophisticated conglomerate of companies with extensive experience in the lending industry. They knew full well money lenders are not eligible to receive SBA 7(a) loans or PPP loans. Riviera ripped off a government aid program, needed by working families to survive.

5.     <u>No Economic Necessity</u>. The rules explaining what the purpose of the loan are clear: to help workers. There was no "need" or "economic necessity" to pay Defendant's payroll expenses.[4] Riviera Finance cannot show any decline in revenue as a result of the pandemic. In fact, Riviera's profits increased during the pandemic. Riviera did not need the loan. Riviera took advantage of the PPP program and used it as a windfall.

---

cash." Riviera's business is money lending. Riviera's other activities include other types of factoring.

[3] A NAICS Code is a classification within the North American Industry Classification System. The NAICS System was developed for use by Federal Statistical Agencies for the collection, analysis and publication of statistical data related to the US Economy. 522291 - Consumer Lending. This U.S. industry comprises establishments primarily engaged in making unsecured cash loans to consumers.

Illustrative Examples:

Finance companies (i.e., unsecured cash loans)
Personal credit institutions (i.e., unsecured cash loans)
Loan companies (i.e., consumer, personal, student, small)
Student loan companies

[4] Riviera Financial is not a small business in dire financial straits, but rather a well financed finance company. Public information shows Riviera's revenue at $31,000,000 per year. Defendant cannot show "economic necessity" in needing the loans to continue business operations.

6.     <u>Money Not Returned</u>. The money was borrowed for a business which was not allowed to take even one penny in loans, let alone millions of dollars. The **$2,738,544.00** in funds should have been returned. Not a penny has been returned.

7.     <u>Riviera's False Statements and Fraud</u>. Defendants knowingly and intentionally made many material false statements to the government and bank to obtain the loans.

8.     Defendants used the loan for unauthorized purposes.

9.     Defendant's communication of false statements constitutes Wire Fraud pursuant to 18 U.S.C. Section 1343, which occurred when Defendants used "the wires" (this includes using the internet or the phone) to steal money by making false statements or promises.

10.    Defendant's communication of false statements also constitutes Bank Fraud (18 U.S.C. Section 1344) – by making false statements to a bank or other financial institution.

11.    Defendants communicated in writing, deceptive statements, including without limitation, with respect to the eligibility of the company obtaining the loans, economic necessity of the loan, the intended purpose of the loan, and the actual use of the proceeds, among others.

12.    Plaintiff-Relator, Relator LLC on behalf of the United States of America brings this action to recover treble damages, civil penalties, and costs

under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and to recover

damages and other monetary relief under the common law and equitable theories of

unjust enrichment and payment by mistake.

13.     This action arises from numerous false statements and claims that the

Defendants knowingly presented to the United States and the United States Small

Business Administration ("SBA") and lenders acting on the SBA's behalf, in

violation of the FCA and common law.

14.     The Defendants unlawfully obtained millions of dollars of PPP

Proceeds (as defined below),and failed to return or repay the money.

15.     In summary, Riviera used the pandemic to obtain two large PPP loans

from the government. They deceptively completed the SBA loan application by

seeking money for a business which is INELIGIBLE to receive even one dollar of

PPP loans, because it itself is a lender. The industry in which Riviera belongs is

expressly *prohibited* from receiving SBA loans generally and the PPP loan

specifically also. Riviera is a business with a multitude of lending operations across

the United States. Defendant's stock in trade is money. Not only was the loan

impermissible, but Defendant took out two loans. Riviera knew full well that many

false statements to the government and SBA and his activities in seeking this loan

and loan forgiveness were illegal, but they persisted and kept the money.

## II.    THE PARTIES

16.     Plaintiff-Relator LLC, is a California limited liability company with its

principal place of business in Los Angeles, California.

17.     Defendant Riviera Finance LLC is a California Limited Liability Company formed in California on March 29, 1996, with its principal place of business 220 Avenue I, Redondo Beach, 90277.

18.     Defendant Riviera Finance of Texas, Inc. is a California Corporation formed in California on February 3, 1988, with its principal place of business 220 Avenue I, Redondo Beach, 90277

19.     During round 1 of the paycheck protection program, Riviera Finance LLC applied for and received a PPP loan for **$788,617.00.** It was approved on January 31, 2021 by the SBA for the full amount, which was disbursed. The loan was facilitated by Wells Fargo Bank, National Association. They received 100% of the approved amount. On its application for this loan, Riviera Finance LLC stated that it had 54 employees for which it needed the loan.

20.     During round 1 of the paycheck protection program, Riviera Finance Of Texas, Inc. applied for and received a PPP loan for **$1,949,927.00.** It was approved on May 1, 2020 by the SBA for the full amount, which was disbursed. The loan was facilitated by Wells Fargo Bank, National Association. They received 100% of the approved amount. On its application for this loan, Riviera Finance LLC stated that it had 104 employees for which it needed the loan.

### III.    The CARES Act and Paycheck Protection Program

21.     On March 27, 2020, the Coronavirus Aid, Relief, and Economic

Security Act ("the CARES Act" or "the Act") (Pub. L. 116-136) became law and provided emergency assistance and health care response for individuals, families, and businesses affected by the coronavirus pandemic. SBA received funding and authority through the Act to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency.

22.    The CARES Act authorized loans to eligible small businesses struggling to pay employees and other business expenses as a result of the devastating effect of the COVID-19 pandemic.

23.    Section 1102 of the CARES Act temporarily permitted the SBA to guarantee 100 percent of 7(a) loans under a new program titled the "Paycheck Protection Program" ("PPP").

24.    On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act (Pub. L. 116-139) became law and provided additional funding and authority for the PPP. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 (Flexibility Act) (Pub. L. 116-142) became law and changed key provisions of the Paycheck Protection Program, including provisions relating to the maturity of PPP loans, the deferral of PPP loan payments, and the forgiveness of PPP loans.

25.    Under the PPP, in 2020, eligible businesses could obtain one SBA

COMPLAINT

guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

26.     The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. In order to obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application (SBA Form 2483) required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

27.     Once the Borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

28.     After the Lender processed and approved a borrower's PPP loan application (Form 2483), but prior to the closing of the PPP loan, the Lender submitted to the SBA, the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) to the SBA applying for a guarantee on the loan.

For a PPP loan to be approved, the Lender was required to Answer Yes to the following questions in the Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) as to the Borrower's certification of its General Eligibility to receive a PPP Loan:

| | | ☐Yes | ☐No |
|---|---|---|---|
| • | The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099MISC; (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant; (3) the funds will be used to retain workers and maintain payroll, or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures; and (4) the Applicant has not and will not receive another loan under the Paycheck Protection Program, section 7(a)(36) of the Small Business Act (15 U.S.C. 636(a)(36)) (this does not include Paycheck Protection Program second draw loans, section 7(a)(37) of the Small Business Act (15 U.S.C. 636(a)(37)). | | |

SBA Form 2484 (emphasis added). Therefore, if a PPP borrower lied on its PPP loan application (SBA Form 2483), the PPP borrower's false certification caused the Lender to submit to the SBA with respect to that PPP Loan, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that

9

COMPLAINT

contained the PPP borrower's False Statement.

29.    SBA Form 2483 provides the following certification, among others  "I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them" (hereafter the "Understanding Certification").

30.    SBA Form 2483 provides the following certification, among others "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)" (hereafter the "Eligibility Certification").

31.    SBA Form 2483 provides the following certification, among others "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule" (hereafter the "Use of Proceeds Certification")

32.    SBA Form 2483 additionally provides the following certification, among others: "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant" (hereafter the "Economic Necessity Certification").

COMPLAINT

33.     SBA Form 2483 additionally provides the following certification, among others: "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud" (hereafter the "Worker Retention and Payroll Certification.")

34.     SBA Form 2483 additionally provides the following certification, among others: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program." (hereafter the "Single Loan Certification.")

35.     SBA Form 2483 additionally provides the following certification, among others: "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years

and/or a fine of not more than $1,000,000" (hereafter the "No False Statements Certification").

36.    After the borrower submitted the PPP loan application, that application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA. Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution and take on the responsibility for paying back the loan.

37.    Under the applicable PPP rules and guidance, recipients of PPP loans could apply to have the interest and principal on the PPP loan fully forgiven, meaning that the borrower would owe nothing and would have no obligation to repay the PPP loan. To obtain full forgiveness of the PPP loan, borrowers had to attest that they had "not reduced the number of employees or the average paid hours of [their] employees" during the loan period, that the loan proceeds had been spent on payroll costs and other permitted expenses and that at least 60% of the loan proceeds had been spent on payroll costs (hereafter the "Loan Forgiveness Certification").

38.    Loans could only be used for certain permitted expenses, such as to fund payroll costs and employee benefits, such as health insurance, to pay for, mortgage interest, rent, utilities or worker protection costs related to COVID19.

COMPLAINT

39.     13 CFR§ 120.110 provides a list of what type of business are INELIGIBLE for SBA loans. This list includes <u>money lenders</u> like Defendant …

**"(b) Financial businesses primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)"**

40.     On April 2, 2020, the SBA posted the First PPP Interim Final Rule announcing the implementation of the CARES Act. SBA posted additional interim final rules on April 3, 2020, and April 14, 2020. On April 28, 2020, SBA posted an interim final rule supplementing the previously posted interim final rules with additional guidance. See, Federal Register / Vol. 85, No. 82 / Tuesday, April 28, 2020 / Rules and Regulations at, 23450-52, available at https://home.treasury.gov/system/files/136/Interim-Final-Rule-on-Requirements-for-Promissory-Notes-Authorizations-Affiliation-and-Eligibility.pdf. This interim final rule supplemented previous regulations and guidance on several important, discrete issues. The April 28, 2020, Interim Final Rule was immediately effective without advance notice and public comment because section 1114 of the CARES Act authorized SBA to issue regulations to implement Title I of the CARES Act without regard to notice requirements. *Id.*

41.     With respect to the PPP, the January 6, 2021, Interim Final Rule provided Clarification Regarding Eligible Businesses, specifically 13 CFR Parts 113,

120 and 121.

*"Are businesses that are generally ineligible for 7(a) loans under 13 CFR*

*120.110 eligible for a PPP loan?*

**Paragraphs (a), (g), and (k), of 13 C.F.R. 120.110 do not apply to PPP loans.**

**For PPP loans, the ineligibility restriction in 13 C.F.R. 120.110(n) is**

**superseded by subsection B.2.a.iii. of this interim final rule. Otherwise, a**

**business is not eligible for a PPP loan if it is a type of business concern (or**

**would be, if the entity were a business concern) described in 13 C.F.R.**

**120.110, except as permitted by subsections B.1.d and B.1.g of this rule or**

**otherwise permitted by PPP rules. Businesses that are not generally eligible**

**for a 7(a) loan under 13 C.F.R. 120.110 are described further in SBA's**

**Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A, Chapter**

42.     The SBA's Standard Operating Procedure (SOP) 50 10 6, Part 2, Section A,

Chapter states as follows:

**CHAPTER 3: INELIGIBLE BUSINESSES**

A. **TYPES OF INELIGIBLE BUSINESSES**

The SBA Lender must determine whether the Applicant is one of the types of businesses listed as ineligible in SBA regulations (13 CFR § 120.110). Certain business types appearing on this list may be eligible under limited circumstances, as discussed below.

1. Businesses organized as non-profit businesses are ineligible (for-profit subsidiaries may be eligible). 13 CFR § 120.110 (a)

2. Businesses Engaged in Lending 13 CFR § 120.110 (b).

   a. SBA cannot guarantee a loan that provides funds to businesses primarily engaged in lending, investment, or to an otherwise eligible business engaged in financing, factoring, or investment not related or essential to the business. This prohibits SBA Loans to:

      i. Banks;

      ii. Life Insurance Companies (but not independent agents);

      iii. Finance Companies;

      iv. Factoring Companies;

      v. Investment Companies;

      vi. Bail Bond Companies; and

      vii. Other businesses whose stock in trade is money.

   b. The limited circumstances under which certain businesses engaged in lending may be eligible are as follows:

      i. A pawn shop that provides financing is eligible if more than 50% of its revenue for the previous year was from the sale of merchandise rather than from interest on loans.

      ii. A business that provides financing in the regular course of its business (such as a business that finances credit sales) is eligible, provided less than 50% of its revenue is from financing its sales.

      iii. A mortgage servicing company that disburses loans and sells them within 14 calendar days of loan closing is eligible. Mortgage companies primarily engaged in the business of servicing loans are eligible. Mortgage companies that make loans and hold them in their portfolio are not eligible.

      iv. A check cashing business is eligible if it receives more than 50% of its revenue from the service of cashing checks.

Effective October 1, 2020                                                                                   Page 141

43.     Riviera is a factoring company, a money lender. They are clearly not allowed to receive SBA loans. Riviera, as a sophisticated Defendant, and should have known this. They disregarded these clear rules.

COMPLAINT

44.     Defendant's certification was false because **they _are_ the type of business/industry which is _prohibited_ from SBA loans**: **The Defendants are a factoring company, money lenders**.

45.     In addition to applying any applicable business type ineligibility rules, all borrowers should carefully review the required certification on the Paycheck Protection Program Borrower Application Form (SBA Form 2483) stating that ''[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.''

46.     Riviera is a multi-national, voraciously successful money lending business. Discovery will reveal where the millions in PPP funds actually went, but certainly Riviera did not _need_ any financial assistance. This business was lending other people money. Riviera's "stock in trade" is money and business was booming. Riviera simply ripped off the PPP program and had the US taxpayers subsidize their business, at best, subsidize their luxury living, at worst.

### IV.    Defendants' False Statements and Misuse of Proceeds

47.     Defendants applied for and received the PPP Loans in the total amount of **$2,738,544.00**. In order to receive the loan, Defendants would have to have completed SBA Form 2483 entitled "Borrower Application Form". In doing so, Defendants intentionally made materially false statements with respect to the Eligibility Certification, the Use of Proceeds Certification, the Economic Necessity Certification, the Worker Retention and Payroll Certification, the No False

Statements Certification and the Single Loan Certification.

48.     Defendants signed the loan applications, thereby endorsing the Understanding Certification, which means that they agreed that they understood the rules and guidelines of the PPP, including, without limitation the rules regarding use of proceeds and the certifications made.

49.     <u>Ineligible Industry</u>. The proceeds of the PPP Loans were not and could not have been used only for authorized purposes consistent with the Paycheck Protection Program Rule, because, among other things, the Defendants were not even allowed to apply for PPP loans because of their industry (money lenders), therefore when Defendants made the Use of Proceeds Certification, the certification was false.

50.     <u>No Economic Necessity</u>. The proceeds of the PPP Loans were not necessary to support the ongoing operations of Defendants. Therefore, when Defendants made the Economic Necessity Certification, the certification was false.

51.     <u>Using PPP Loan in Unauthorized Way</u>. The PPP Loan is not authorized by the SBA rules generally and PPP rules also to be used to used for business expenses in the factoring industry, therefore when Defendants made the Worker Retention and Payroll Certification, the certification was false.

52.     On their loan applications, Defendant knowingly and intentionally made several key statements which were false and intended to deceive. These key

false statements by Defendants made it possible for them to get the loans.

53.     By virtue of the above false statements, when Defendants made the No False Statements Certification, that certification was false.

## V.     THE FALSE CLAIMS ACT

54.     Plaintiff alleges that, from at least April 28, 2020 through the time of the filing of this Complaint, Defendants violated the FCA by "knowingly" submitting and/or causing the submission of false claims for payment to lenders authorized by the SBA to process PPP loan applications in the form of PPP Applications and the resulting receipt and failure to return PPP loans. These claims for payment were false because Defendants: (1) made knowingly false statements and certifications in their PPP applications, and in certifications accompanying its receipt of federal PPP funds, that it was complying with, and would continue to comply with, applicable laws and regulations governing the award of PPP loans; and/or (2) made, or caused to be made, false representations in loan applications that the Corporate Defendants were eligible to receive such PPP loans. Moreover, Defendants' false claims caused their bank, on numerous occasions, to submit to the SBA, a Lender's Application - Paycheck Protection Program Loan Guaranty (SBA Form 2484) that contained Defendants' false statement concerning Defendants' general eligibility for the PPP loans, on which the SBA relied and paid to the lenders.

55.     The False Claims Act prohibits fraudulent conduct in connection with federal programs, including the knowing submission of false claims for payment to the government. See 31 U.S.C. § 3729(a)(1)(A). In these circumstances, liability may attach if the omission renders those representations misleading. 41. 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA provide that:

(1) . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim,

. . .

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government, is liable to the United States Government . . .

31 U.S.C. § 3729(a)(1)(A), (B), and (G) (2020).

42. The scope of a false or fraudulent claim is to be broadly construed. As used in the FCA, a "claim"

(A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the United States; or

(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government—
(I) provides or has provided any portion of the money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or other recipient for any

portion of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2) (2020).

56.     A person who violates the False Claims Act during the time period at issue "is liable for a civil penalty as adjusted, plus 3 times the amount of damages which the United States Government sustains because of the act of that person." 31 U.S.C. § 3729(a). See 28 C.F.R. § 85.3(a)(9); Department of Justice, 28 CFR Part 85, Civil Monetary Penalties Inflation Adjustments for 2022 published at: https://www.govinfo.gov/content/pkg/FR-2022-05-09/pdf/2022-09928.pdf.

## VI.     JURISDICTION & VENUE

57.     This Court has subject matter jurisdiction over the Plaintiff's claims brought under the FCA, 31 U.S.C. §§ 3279, et seq., pursuant to 31 U.S.C. §§ 3730 and 3732. This Court has supplemental jurisdiction to entertain the common law and equitable causes of action under 28 U.S.C. § 1367(a).

58.     Plaintiff The United States of America is also located in the Central District of California. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, Defendants transacted business and are located in the Central District of California, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.[5]

59.     Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because the Defendant's acts that form the basis of this Complaint occurred in the Central District of California.

---

[5] Riviera operates throughout California. Riviera, bother Riviera Finance LLC and Riviera of Texas, Inc. are located and transact business in California.

60.     Relator's claims and this Complaint are not based upon prior public disclosures of allegations or transactions in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other federal report, hearing, audit, or investigation; or from the news media. To the extent that there has been a public disclosure unknown to Relator, it is the "original source" within the meaning of 31 U.S.C. § 3730(e)(4)(B) and/or the public disclosure is a result of Relator voluntarily providing this information to the United States Government prior to filing this *qui tam* action.

## VII.   FIRST CAUSE OF ACTION

## FALSE OR FRAUDULENT CLAIMS (31 U.S.C. § 3729.(a)(1)(A-B))

61.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

62.     This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq*., as amended.

63.     By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, to an officer or employee of the United States government, false or fraudulent claims for payment or approval, in violation of the FCA, 31 U.S.C. § 3729(a)(l)(A).

64.     By virtue of the acts described above, Defendants knowingly made or

used, or caused to be made or used, false or fraudulent records or statements

material to false or fraudulent claims for payment by the Government.

65.         Because of the Defendants' acts, the United States sustained damages

in an amount to be determined at trial and, therefore, is entitled to treble damages

under the FCA, plus civil penalties of not less than $12,537.00 and not more than

$25,076.00 for each and every violation arising from Defendants' unlawful conduct

alleged herein.

//

//

//

//

//

//

//

//

//

//

//

//

//

COMPLAINT

## **PRAYER FOR RELIEF**

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendants, as follows:

1. That this Court enter judgment against each Defendant in an amount equal to three times the damages that the United States has sustained because of Defendants' action, plus a civil penalty of not less than $12,537.00 and not more than $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper.

2. Such other relief as this Court may deem just and proper, together with interest and costs of this action.

3. Reasonable attorney fees, litigation expenses, and costs of suit

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: July 11, 2022                          THE LAW OFFICE OF HAKIMI & SHAHRIARI


                                   By:   /s/ Peter Shahriari
                                         PETER SHAHRIARI, ESQ.
                                         Attorney for Plaintiff

COMPLAINT